UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MARK W. SCOTT,                    :        CIVIL NO. **1:05-1542**
                                  :
              Plaintiff           :
                                  :
    v.                            :        (Judge Conner)
                                  :
JO ANNE B. BARNHART,              :        (Magistrate Judge Smyser)
Commissioner of Social            :
Security,                         :
              Defendant           :
                                  :


**REPORT AND RECOMMENDATION**


The plaintiff has brought this action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the plaintiff's claim for disability insurance benefits.


**I.  Procedural Background**

The plaintiff applied for disability insurance benefits on June 21, 1996, alleging disability since December 10, 1994 due to degenerative disc disease of the lumbosacral spine with chronic low back pain.  Tr. 64, 82.  His application was denied initially and upon reconsideration.  Tr. 47-51, 53-55.  The plaintiff requested a hearing, and appeared before an administrative law judge (ALJ) on September 9, 1997.  Tr. 56, 171-208.  The ALJ

issued an unfavorable decision on December 10, 1997.  Tr. 211-18.

On July 10, 2001, the Appeals Council denied the plaintiff's

request for review.


   The plaintiff filed a civil action pursuant to 42 U.S.C. §

405(g).  *Scott v. Commissioner,* M.D.Pa. Civil No. 3:01-CV-1600.

Tr.248-249.  The case was, upon the Commissioner's request,

voluntarily remanded by Order of June 19, 2002 (Tr. 251) for

further evaluation of the plaintiff's credibility.  Tr. 255-56.


   The plaintiff and a vocational expert testified at an

October 12, 2002 supplemental hearing.  Tr. 328-60.  On December

20, 2002, the ALJ issued a decision denying the application.  Tr.

233-41.  The Appeals Council denied the plaintiff's request for

review on June 7, 2003.  Tr. 219.  The plaintiff filed a second

civil action on July 17, 2003.  *Scott v. Barnhart,* M.D.Pa. Civil

No. 1:03-CV-1210.  A March 3, 2004 Report and Recommendation

recommended a reversal and a remand for the calculation and

payment of benefits.  Tr. 394-412.  By Order of June 15, 2004,

the case was remanded by the court to the Commissioner for

further proceedings and further consideration and explanation of

the plaintiff's pain symptoms.  Tr. 413-16.

2

The plaintiff and a vocational expert testified at a second supplemental hearing.  Tr. 437-95.  On December 15, 2004, the ALJ issued an unfavorable decision.  Tr. 370-75.  The Appeals Council denied the plaintiff's request for review.  Accordingly, the ALJ's decision became the final decision of the Commissioner.  42 U.S.C. § 405(g).  The civil action was filed on August 1, 2005. The plaintiff now seeks judicial review of the ALJ's December 15, 2004 decision.  Doc. No. 1.  The case has been fully briefed.

## II.  Factual Background

The plaintiff was forty-four years old at the time his insured status expired, on June 30, 2000, making him a "younger" individual under the Regulations.[1]  Tr. 64, 371.  20 C.F.R. § 404.1563 (2005).  He has a high school education and past work experience as a factory line technician and carpenter.  Tr. 86. He has not worked since late 1994 or early 1995.  Tr. 475.

The plaintiff underwent a left L5 hemilaminectomy, L5-S1 diskectomy and L5 and S1 foraminotomies on September 6, 1995,

---

[1] The plaintiff alleged a disability onset date of December 10, 1994, but needed to show disability on or before June 30, 2000, his date last insured, in order to qualify for DIB.  Tr. 370.  20 C.F.R. § 404.131(a).

after an MRI had revealed a large herniated nucleus pulposus at L5-S1.  Tr. 103.  He received treatment for back pain, in the form of therapy, heat, massage, pain medications and cortisone shots, through 1996.  Tr. 121-50, 463-65, 470.  At the time of the hearing, the plaintiff was still taking pain medications, Oxycontin and Flexeril, but no longer undergoing therapy or receiving cortisone injections.  Tr. 471-73.

At the most recent hearing, the plaintiff testified that he had gotten no pain relief from the surgery.  Tr. 471.  He testified that his physician had discussed performing a second surgery, but that he elected not to have it for fear that it could make his pain worse.  Tr. 472.  The plaintiff also stated that he could not work at a job where he had to sit all of the time because of pain and because of drowsiness caused by his medications.  Tr. 477.  He had testified at a previous hearing that he could not stand all day and that when he sits, he needs frequently to stand up and stretch and walk.[2]  Tr. 342.

---

[2]  The ALJ incorporated the plaintiff's testimony from the previous hearings, held on September 9, 1997, and October 17, 2002, in the ALJ's current decision.  Tr. 371.

In December of 1996, Roger Sayre, M.D., found the plaintiff
to be suffering from moderate to severe pain.  On September 26,
1997, Dr. Sayre again evaluated the plaintiff.  He observed the
plaintiff's gait.  He thought that the plaintiff appeared to be
in mild to moderate pain.  On that date, he found that the
plaintiff had full range of motion of his back and could nearly
touch his toes, but only with "a fair amount of grunting."  Tr.
170.  Dr. Sayre noted that the plaintiff had no difficulty
getting on the examination table, but had a wide-based gait, was
bent at the waist and "appeared in mild to moderate distress."
*Id.*  The plaintiff could bend, twist and lean backward without
pain.  *Id.*  His back was non-tender upon palpation and straight
leg raising was negative to seventy-five degrees.  *Id.*  Dr. Sayre
stated that the plaintiff had ongoing back pain due to a
herniated disc.  *Id.*

The plaintiff began seeing Gary D. Russell, M.D., in January
of 1998.  Tr. 295.  In February of 1998, the plaintiff had
minimal tenderness in his back and negative straight leg raising.
Tr. 13.  The plaintiff complained, however, that his low back was
sore and that he was not sleeping well.  *Id.*  Dr. Russell
increased his pain medication dosage.  *Id.*

In November 1999, the plaintiff told Dr. Russell that he laid down six times a day and took hot baths for his pain.  Tr. 293.  He told Dr. Russell that he could sit for fifteen to twenty minutes before needing to stand for fifteen to twenty minutes, and that he had trouble getting up and down.  *Id.*  Straight leg raising was negative and the plaintiff's gait and reflexes were normal.  *Id.*  Dr. Russell noted some limitation of flexion in the back and a decreased range of motion in the hips.  *Id.*

In May 2001 Edward A. Czarnecki, Ph.D., performed a mental status examination by telephone and a psychological evaluation, an MMPI-2 profile, by mail.[3]  Tr. 25.  Dr. Czarnecki noted that the plaintiff had been taking Prozac, prescribed by his internist, for the preceding six months.  Tr. 24.  Dr. Czarnecki concluded from the test results that the plaintiff's complaints were "probably credible and valid" although he also noted hypochondriasis, depression and hysteria.  Tr. 26.   He opined that the plaintiff was not exaggerating his pain, however, and was sincere. Tr. 26-27.

---

[3] Dr. Czarnecki described the MMPI-2 (Minnesota Multiphasic Personality Inventory-2 profile) test as a self-reported, forced-choice test in which the subject's responses are compared to a norm group to assess both the subject's responses and the extent to which they are exaggerated.  Tr. 25.

### III.  Disability Determination Process

The Commissioner has promulgated regulations creating a
five-step process to determine if a claimant is disabled.  The
ALJ must sequentially determine:  (1) whether the claimant is
engaged in substantial gainful activity; (2) whether the claimant
has a severe impairment; (3) whether the claimant's impairment
meets or equals a listed impairment; (4) whether the claimant's
impairment prevents him from doing past relevant work; and (5)
whether the claimant's impairment prevents him from doing any
other work.  20 C.F.R. § 404.1520.

In the plaintiff's case, the ALJ determined that: (1) the
plaintiff had not engaged in substantial gainful activity since
his alleged disability onset date; (2) the plaintiff's orthopedic
impairments are severe; (3) his impairments do not meet or equal
a listed impairment; (4) the plaintiff could not perform his past
relevant work; and (5) he has residual functional capacity (RFC)
to lift and carry ten to fifteen pounds occasionally and five to
ten pounds frequently, sit for six hours in an eight-hour work
day with a sit/stand option, walk for two hours with a sit/stand
option, but never bend or twist.  Tr. 374.  Because the plaintiff
had the RFC to perform a significant range of sedentary work, the

7

ALJ concluded that he is not disabled under the Act.  Tr. 375.

20 C.F.R. § 404.1520(c).


**IV.  Discussion**

   The plaintiff argues that the ALJ erred in (1) not giving

controlling weight to the opinions of his treating physicians;

(2) not finding him credible; and (3) finding that he had the RFC

to perform a significant range of sedentary work.


A.  Standard of Review

   When reviewing the denial of disability benefits, we must

determine whether the denial is supported by substantial

evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988);

*Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial

evidence "does not mean a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Pierce v.*

*Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358,

360. (3d Cir. 1999).  It is less than a preponderance of the

evidence but more than a mere scintilla.  *Richardson v. Perales*,

402 U.S. 389, 401 (1971).  A single piece of evidence is not

substantial evidence if the Commissioner ignores countervailing

evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).


    B.   Whether the ALJ erred in not giving controlling weight to the opinions of the plaintiff's treating physicians

    The plaintiff argues that the ALJ erred in not granting controlling weight to the opinions of his treating physicians. The plaintiff cites several opinions in the record regarding either his pain or  work ability: (1) two treating physicians' opinions, dated December 1995 and January 1996, that the plaintiff was unable to perform any type of work since January of 1995; (2) Dr. Sayre's September 1997 opinion that the plaintiff's "clinical presentation was compatible with an individual suffering from moderate to severe pain associated with a herniated disc;" (3) Dr. Russell's diagnosis of chronic low back pain and chronic cervical spine/neck pain;[4] (4) Dr. Sayre's September 1997 opinion that the plaintiff was incapable of performing sedentary work; and (5) Dr. Czarnecki's opinion that

---

    [4] While Dr. Russell did diagnose, as the plaintiff points out, chronic low back pain and chronic cervical spine/neck pain, he did not, as the ALJ pointed out, check an available box to indicate that he considered the plaintiff "totally and permanently incapacitated."  Instead, Dr. Russell wrote "patient continues to complain [of] chronic back pain" over the box.  Tr. 283-884, 373.

the plaintiff was sincere with respect to his reports of pain.[5]
Tr. 118-119, 170, 283-84, 160, 27.

There is no reference in the ALJ's decision to any other
doctor's opinions.  The ALJ's rationale is constructed upon the
finding of inadequacies in the plaintiff's medical evidence and
in his credibility.

The Third Circuit set forth the standard for evaluating the
opinion of a treating physician in the case of *Morales v. Apfel*,
225 F.3d 310  (3d Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility
> determinations is that the ALJ accord treating
> physicians' reports great weight, especially "when
> their opinions reflect expert judgment based on a
> continuing observation of the patient's condition
> over a prolonged period of time." *Plummer v. Apfel*,
> 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v.
> Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also
> Adorno v. Shalala*, 40 F.3d 43,47 (3d Cir.1994);
> *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37,
> 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d
> 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585.

---

[5] Dr. Czarnecki is not a medical doctor.  It bears noting that
Dr. Czarnecki, who never examined the plaintiff in person, but only
spoke to him once on the telephone and administered a written
evaluation by mail, is not a treating physician.  20 C.F.R. §
404.1527 (d).

As the plaintiff points out, the only valid bases for an ALJ
to reject a treating physician's opinion are if there is
contradictory medical evidence or if the opinion is unsupported
by medical data. *Kurilla v. Barnhart,* 2005 WL 2704887, at *5
(E.D.P.A. Oct. 18, 2005) (quoting *Plummer,* 186 F.3d at 429 and
citing *Newhouse v. Heckler,* 753 F.2d 283 (3d Cir.1985). An ALJ
may not make "speculative inferences from medical reports" or
dismiss a treating physician's opinion on the basis of his own
credibility judgment, speculation or lay opinion. *Id.* (citing
*Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405,
408 (3d Cir.1988); *Kent*, 710 F.2d at 115).

The ALJ did not give great weight to Dr. Sayre's opinion,
that the plaintiff was not capable of even sedentary work,
because he found it to have been based on the plaintiff's
complaints rather than on objective clinical findings.  Tr. 373.
The plaintiff contends that this is mere speculation on the ALJ's
part, and therefore an improper reason for rejecting the treating
physician's opinion.  We agree.  While Dr. Sayre's opinion was in
the form of a checked box on a questionnaire, it is also
important to recognize that he was a treating physician who
examined the plaintiff on multiple occasions.  Although it is

11

true that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best," *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993), an ALJ may not reject treating physicians' opinions on the basis of his own credibility judgment or speculation.  *Plummer*, 186 F.3d at 429. Before rejecting treating physicians' opinions, the ALJ should have either pointed to contradictory medical evidence or fleshed out how the medical evidence did not support the opinions contained in the forms.  *Kurilla,* 2005 WL 2704887 at *5.

The Commissioner asserts that the ALJ did not give Dr. Sayre's opinion controlling weight because he found it to be inconsistent with the objective medical evidence.  Doc. No. 13 at 10.  Had the ALJ pointed to evidence that Dr. Sayre's objective findings did not support Dr. Sayre's opinion, a sufficient reason may have been stated for rejecting the opinion.  *See Kurilla v. Barnhart,* 2005 WL 2704887, at *5 (E.D.P.A. Oct. 18, 2005) (noting that an ALJ may reject a treating physician's opinion if it is unsupported by medical data).  But the ALJ did not point to contradictory medical evidence.

12

The plaintiff also contends that the ALJ erred in evaluating Dr. Czarnecki's opinion.  Tr. 373.  The ALJ rejected Dr. Czarnecki's diagnoses of anxiety and depression but did not discuss Dr. Czarnecki's conclusion that the plaintiff was sincere regarding his pain.  Tr. 27, 373.  Even though the Report and Recommendation of March 3, 2004 (Tr. 394-412) adopted in part by the District Court, and the Order of June 15, 2004 (Tr. 413-416) required consideration of the MMPI-2 test results regarding the plaintiff's sincerity about his pain, the ALJ did not do so.  Tr. 372-73, 407-08, 416.

It stands out strikingly that the decision here is not based upon "medical opinions...from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations", despite the ALJ's acknowledgment that this is an important source of evidence.  Tr. 371.  Advancing from this acknowledgment to a discussion of the medical evidence, the ALJ cites from the comments and reports of Dr. Sayre, Dr. Russell, Dr. Simonds and Dr. Czarnecki.  The ALJ stated reasons grounded in his own expertise not to give evidentiary weight to these doctors' opinions.  Tr. 372-373.  The ALJ did not cite to any conflicting medical opinion(s).  Thus,

the ALJ did not base the findings he made on evidence.  The ALJ purported to draw inferences from the basic underlying medical data, but this undertaking is not the proper role of the judge. Even if it were, the inferences drawn are not adequately explained.  For example, when the ALJ states that "... while the claimant's surgical history and MRI abnormalities can cause pain, the findings on physical examinations do not fully support the claimant's allegations of incapacitating discomfort" (Tr. 372), the ALJ has stated without adequate explanation that he is basing this adjudication upon his own expertise.  Similarly, the ALJ's assumptions about medical practitioners' protocol and methods evident throughout his decision are not shown to be based upon actual expert knowledge on his part.


     C.  Whether the ALJ erred in not finding the plaintiff credible

     The plaintiff next argues that the ALJ erred in not finding him credible regarding the severity of his pain.  Tr. 372, 373.


     "An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence."  *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985).  Where "medical evidence does support

14

a claimant's complaints of pain, the complaints should then be given "great weight" and may not be disregarded unless there exists contrary medical evidence." *Mason*, 994 F.2d at 1067-68 (citing *Carter,* 834 F.2d at 65; *Ferguson,* 765 F.2d at 37).

Here, the ALJ, without actually pointing to specific portions or elements of the plaintiff's testimony, found not credible the plaintiff's allegations concerning the severity of his pain and the extent of his functional limitations.  Tr. 373. The ALJ conceded that the plaintiff no doubt experiences pain, but found that "the severity of his subjective complaints and functional limitations are disproportionate with that which would be expected from the objective medical evidence."  Tr. 373.  The ALJ based this conclusion on the plaintiff's "paucity of treatment, other than prescription medications," since 1996 as well as the fact that "no disuse muscle atrophy ha[d] been documented."  Tr. 372.

The ALJ found that the plaintiff "had impairments that can reasonably be expected to produce the pain and limitations alleged", but then concluded that the record lacked evidence of

15

pain after June 1996.  Tr. 371-72.  The Third Circuit does not
require such evidence.  *Green v. Schweiker*, 749 F.2d 1066, 1071
(3d Cir. 1984) held that, while the Act requires objective
evidence of some condition that could reasonably produce pain,
there need not be objective evidence of the pain itself.  In this
case, there is no question that the plaintiff from 1995 to 2000
(and thereafter) had a condition that could, reasonably, produce
pain.  Evidence of an infrequency of visits to physicians, pain
clinics, or emergency rooms, which the ALJ found to be probative
(Tr. 372), may not be accorded probative weight unless there is a
reasoned explanation of how it demonstrates the inference
purportedly drawn from it.  Here, the plaintiff explained a lack
of improvement or relief other than from the pain medication.
While the ALJ may believe this to be untrue, no evidence that it
is untrue is cited from this record.

There is in this record strong corroborative evidence of
pain.  The ALJ failed to explain the minimalization of probative
evidence of pain presented through the plaintiff's testimony,
evidence that the plaintiff regularly renewed his pain
medications, Dr. Russell's diagnosis of chronic low back pain and

16

chronic cervical spine/neck pain, and Dr. Sayre's September 1997
opinion that the plaintiff's clinical presentation was compatible
with an individual suffering from moderate to severe pain
associated with a herniated disc. Tr. 471-73, 477-79, 372, 283-
84, 170.  The ALJ also failed to reasonably reject Dr.
Czarnecki's opinion, based on the MMPI-2 test results, that the
plaintiff's reports of pain were sincere.  Tr. 27, 383.  Social
Security Ruling 96-7p requires the ALJ to consider "the entire
case record, including the objective medical evidence, the
individual's own statements about symptoms, [and] statements and
other information provided by treating or examining physicians."
*Id.*

     While an ALJ's credibility determination must of course be
accorded deference, the ALJ "must provide an adequate basis so
that the reviewing court can determine whether the administrative
decision is based on substantial evidence."  *Cotter v. Harris,*
642 F.2d 700, 706 (3d Cir. 1981).  "[T]here is a particularly
acute need for some explanation by the ALJ when the ALJ has
rejected relevant evidence or when there is conflicting probative

evidence in the record." *Id.* The ALJ's explanations as to why he found the plaintiff not fully credible are inadequate.

This case has previously been remanded twice, with instructions for the ALJ to review some of the same issues discussed above pertaining to credibility. Tr. 258-59, 400-09, 416.

D.  Whether the ALJ erred in finding that the plaintiff had the RFC to perform a significant range of sedentary work

The plaintiff's final argument is that the ALJ's finding that the plaintiff has the RFC to perform a significant range of sedentary work is not supported by substantial evidence. Tr. 375. The plaintiff contends that because he is unable to sit for an extended period of time, he is incapable of a sedentary job, defined in the Regulations as one which involves, in addition to sitting, "a certain amount of walking and standing." 20 C.F.R. § 404.1567(a).

Dr. Russell's progress notes indicate that the plaintiff laid down six times a day and sat for only fifteen to twenty

18

minutes before needing to stand for fifteen to twenty minutes. Tr. 293, 347.  The plaintiff also testified that he could sit for no more than an hour before he would have to stand up and walk around.  Tr. 191.  The vocational expert testified that if the plaintiff's testimony regarding his pain and limitations were credible, he would be unable to perform any work.  Tr. 493. The vocational expert stated that if the plaintiff can perform sedentary work with a sit-or-stand option, these are jobs he can do.  Tr.  490-491.

    The Commissioner urges that the ALJ's RFC finding is supported by assessments from two state agency consultants.  Doc. No. 13 at 13.  Tr. 110-17, 151-58.  The ALJ did not, however, base his RFC finding on those two assessments.  Instead, the ALJ based his RFC finding on the plaintiff's "surgical history and MRI findings and the absence of significant limitation of motion, motor, reflex, and sensory abnormalities."  Tr. 373.

19

**V.  Conclusion**

The decision is not supported by substantial evidence.  No basis is presented for a modification of the past recommendation. It is recommended that the case be remanded to the Commissioner with instructions to calculate and pay benefits.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  March 1, 2006.